```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

| | |
|---|---|
| **ERNEST KRAMER,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 09-2408 |
| **REGIONS BANK; MORGAN ASSET** | ) ) |
| **MANAGEMENT, INC.;** | ) |
| **MORGAN KEEGAN & COMPANY, INC.;** | ) |
| **DELORES ANCELL,** | ) ) |
| Defendants. | ) |

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Before the Court is Plaintiff Ernest Kramer's August 7, 2009, Motion to Remand. (See Dkt. No. 16.) Defendants Regions Bank, Morgan Asset Management, Inc.; Morgan Keegan & Company, Inc.; and Delores Ancell filed their Joint Response in Opposition on August 27, 2009. (See Dkt. No. 17.) ("Defs.' Resp.") Plaintiff filed a Reply to Defendants' Joint Response on January 15, 2010. Plaintiff generally asserts that his Complaint alleges only state-law causes of action, making federal question jurisdiction inappropriate. (Plaintiff's Memorandum in Support of Motion to Remand at 1.) ("Pl.'s Memo") Because Plaintiff's Complaint fails to raise any substantial issues of federal law, the Court finds that it does not have federal question jurisdiction and GRANTS the Motion to Remand.

I.      BACKGROUND

Kramer is a resident of Maryville, Missouri, and is the named beneficiary of the Helga M. Kramer Revocable Trust (the "Trust").  (Compl. ¶ 1.)  Helga Kramer was the Plaintiff's mother, who died in 2003.  (Id. ¶ 9.)  Helga Kramer established the Trust "in the late 1990's" and named Defendants[1] as trustees.  (Id. ¶ 7.)  She intended that the Trust pursue a conservative investment strategy, and it invested primarily in tax-free bonds.  (Id. ¶ 8.)  As those bonds matured, Defendants placed the money in a money market fund that was "a safe, conservative, income producing investment."  (Id. ¶ 10.)

Defendants later approached Kramer and recommended that he invest in the Regions Morgan Keegan Select Intermediate Bond Fund-A (the "Fund").  (Id. ¶ 11.)  Morgan Keegan & Company created the Fund in 1999 and marketed it as a safe, income-producing investment.  Nonetheless, the Fund lost between 50% and 67% of its value in 2007.  (Id. ¶ 12.)  Kramer alleges that the Fund was an unsuitable investment for his Trust and violated his directions to Defendants that they not speculate with Trust assets.  (Id. ¶ 13.)  Rather than investing in conservative investments, as Defendants represented, the Fund invested in "illiquid, high-risk, complex structured investment vehicles

---

[1] Plaintiff's Complaint refers to the trustees as "Defendants" without further specification.  (See Compl. ¶ 7 ("Defendants at all times relevant to this complaint served as trustee of this trust . . . .").)

2

such as Collateralized Debt Obligations, many of which were backed by subprime mortgages." (Id. ¶ 15.)

Kramer alleges that Defendants knew "of the extremely poor quality and increasing instability" of the Fund. That instability increased because the Fund was an "open end fund." (Id. ¶¶ 17-18.)  Open-end funds are not traded in normal, open markets.  Instead, when an investor decides to sell his shares, he essentially "cashes out," and the proceeds are paid from the assets of the Fund itself. (Id. ¶ 17.)  The Fund must maintain liquefiable assets at all times to pay investors who sell their shares.  As the value of the Fund's assets continued to decline, more investors sought to sell their shares.  As the Fund sold off its "better" assets to pay those shareholders, the remaining assets became increasingly illiquid. (Id.)  This deteriorating situation forced Defendant Regions Bank to invest "over $130 million" to prevent the Fund from becoming insolvent. (Id. ¶ 18.)  Plaintiff alleges that Regions Bank designed this injection of funds to hide the Fund's "tenuous condition" from the public. (Id. ¶ 19.)  By the time Defendant Delores "Chip" Ancell – the trust officer responsible for the Trust – advised Kramer to sell his shares, he had lost $60,000. (Id. ¶¶ 6, 20-21.)

Kramer filed suit in the Circuit Court for Jefferson County, Alabama, on November 20, 2008.  He seeks to rely solely

on Alabama state-law for his causes of action, which include breach of fiduciary duty, negligence, wantonness, breach of contract, fraud, reckless or negligent misrepresentation, suppression, deceit, conspiracy, and violation of the Alabama Securities Act, Ala. Code §§ 8-6-1 et seq. (Compl. ¶¶ 24-68.) Defendants removed Kramer's suit to the United States District Court for the Middle District of Alabama on December 23, 2008. (See Notice of Removal, Dkt. No. 1.)  Pursuant to an order of the Judicial Panel on Multidistrict Litigation, the Middle District of Alabama transferred Kramer's case to this Court, where all related claims against Defendants arising from the collapse of their open and closed-in funds are pending.  (See Transfer Order at 2, Dkt. No. 14); see also In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig., 598 F. Supp. 2d 1379, 1382 (J.P.M.L. 2009) (original order transferring related Morgan Keegan cases to the Western District of Tennessee and establishing Morgan Keegan MDL).  Kramer filed the present Motion to contest this Court's jurisdiction.

## II.   STANDARD OF REVIEW

On a motion to remand, the defendant bears the burden of establishing that removal was proper.  Long v. Bando Mfg. of Am., Inc., 201 F.3d 754, 757 (6th Cir. 2000).  Removal under 28 U.S.C. §§ 1441 and 1446 is appropriate when federal jurisdiction existed at the time of removal, without consideration of

4

subsequent events.  Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007).  "The removal petition is to be strictly construed, with all doubts resolved against removal." Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989) (citing Wilson v. USDA, 584 F.2d 137, 142 (6th Cir. 1978)).  Removal jurisdiction requires a defendant to show that a federal court has original jurisdiction over the action, either through: (1) diversity of citizenship under 28 U.S.C. § 1332; or (2) federal question jurisdiction under 28 U.S.C. §§ 1331, 1441.

### III. ANALYSIS

#### A. When Federal Question Jurisdiction Exists

A defendant's right to remove an action originally filed in state court is statutory.  See 28 U.S.C. § 1441.  Where, as here, defendants seek to remove a suit to federal court based on federal question jurisdiction, they may do so only where the suit "arise[s] under the Constitution, treaties or laws of the United States."[2]  Id. § 1441(b); see also 28 U.S.C. § 1331.  It is well settled that the jurisdiction conferred by § 1331 is narrower than that allowed by Article III, Section 2 of the

---

[2] Defendants cannot remove Kramer's suit based on this Court's diversity jurisdiction because Defendant Regions Bank is an Alabama corporation and Kramer originally filed his suit in Alabama state court.  See 28 U.S.C. § 1441(b) (noting that a defendant may only remove a suit based on diversity jurisdiction where "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought").

5

Constitution.  See Merrell Down Pharms., Inc. v. Thompson, 478 U.S. 804, 807 (1986).  For a suit to arise under federal law, one of three preconditions must exist:  1) federal law creates the plaintiff's cause of action; 2) plaintiff's right to relief under state law requires resolution of a substantial federal-law question actually in dispute; or 3) the claim is in substance one of federal law.  City of Warren v. City of Detroit, 495 F.3d 282, 286 (6th Cir. 2007).  It is undisputed that, here, federal law does not create the causes of action Kramer asserts.[3]  (See Def.'s Resp. at 1.)

Where federal law does not expressly create a plaintiff's cause of action, a court looks to the face of a plaintiff's well-pleaded complaint to determine whether federal-question jurisdiction is appropriate.  Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1, 10 (1983).  Specifically, the court examines "what necessarily appears in the plaintiff's statement of his own claim" in his complaint.  Id. at 11 (internal quotation marks and citation omitted).  The plaintiff is the master of his complaint.  When an aggrieved party may

---

[3] Defendants do not allege that Plaintiff has artfully pled his Complaint to avoid federal jurisdiction.  The artful pleading doctrine applies only where federal law completely preempts a field of law.  City of Warren, 495 F.3d at 288.  The doctrine cannot apply here because "federal securities statutes do not provide the exclusive remedies for all securities fraud claims." Fin. and Trading, Ltd. v. Rhodia S.A., No. 04 Civ. 6083, 2004 U.S. Dist. LEXIS 24148, at *16 (S.D.N.Y. Nov. 30, 2004); see also Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383 (1996) ("Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions.").

6

bring an action under both state and federal law, he may choose to limit his remedy to that provided by state law. Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 515 (6th Cir. 2003). However, a plaintiff runs the accompanying risk that his federal claims may later be precluded. Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995).

The defendant must demonstrate that the asserted federal element is "an essential one[] of the plaintiff's cause of action" for federal jurisdiction to lie. Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936). A defendant may not establish jurisdiction based on a theory not advanced by the plaintiff in his complaint. Merrell Dow, 478 U.S. at 809 n.6. Nor may a defendant remove a case based on a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) (citation omitted). Determining whether federal question jurisdiction exists is ultimately a question of judgment where a court must "pick[] the substantial causes [of action] out of the web and lay[] the other ones aside," and then balance Congressional intent, judicial power, and federalism concerns. Franchise Tax Bd., 463 U.S. at 20-21 (internal quotation marks and citation omitted); see also Merrell Dow, 478 U.S. at 810.

7

### B. Defendants Have Failed to Establish Federal Question Jurisdiction

Although Defendants admit that Plaintiff's claims are state-law causes of action on their face, Defendants assert that Plaintiff's Complaint raises "substantial questions of federal law." (Defs.' Resp. at 1.) Defendants argue that, because federal regulations govern the Fund, Plaintiff's allegations about the Fund's lack of liquidity and diversification necessarily call into question the federal standards governing those requirements. (Id. at 9-13.) Defendants also cite this Court's earlier decision in Landers v. Morgan Asset Mgmt., No. 08-2260, 2009 U.S. Dist. LEXIS 30891, at *3 (W.D. Tenn. Mar. 31, 2009), where the Court denied a motion to remand in a case raising claims against the same Defendants. (Defs.' Resp. at 12-13, 15-16.) Plaintiff responds that Defendants have not met their burden to demonstrate that removal is proper because the face of his Complaint does not in any way rely on federal law. (Pl.'s Memo at 4-5.)

Plaintiff's Complaint raises eleven, interrelated causes of action under Alabama statutory and common law. (Compl. ¶¶ 25-68.) Plaintiff does not reference any federal law or policy. Defendants assert that their heavily-regulated status means that Plaintiff must prove that Defendants violated federal regulations to succeed on his state-law claims, thus giving this

8

Court federal question jurisdiction. (Defs.' Resp. at 9.) However, the mere presence of an allegation that Defendants violated federal law cannot create federal question jurisdiction. See Merrill Dow, 478 U.S. at 813 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."). State law claims also cannot "lose their character because it is common knowledge that there exists a scheme of federal regulation." Pan Am. Petroleum Corp. v. Superior Court of Del., 366 U.S. 656, 663 (1961). Defendants, instead, must establish that Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Comparing Plaintiff's Complaint with that of the plaintiffs in Landers demonstrates that federal jurisdiction is not present here.

Although the plaintiffs in Landers argued that they relied solely on state law as the basis of their claims, a review of their complaint revealed that the source of the duties they cited was federal law. See, e.g., 2009 U.S. Dist. LEXIS 30891, at *22 ("Plaintiffs have asserted no source of Defendant's duty of care other than federal securities laws."); id. at *23

9

(complaint alleged defendants violated § 13 of the Investment Company Act of 1940); id. at *24-25 (alleging violations of SEC guidelines). Kramer does allege an alternative source of defendants' duties: state fiduciary law. (Compl. ¶ 27 (accusing the Defendants of "the most rank form of self dealing").) Rather than alleging that the Defendants violated SEC guidelines, the Investment Company Act of 1940, or other federal securities laws, Kramer alleges that Defendants violated the duties Alabama common law creates when a trustee-beneficiary relationship exists. Compare Landers, 2009 U.S. Dist. LEXIS 30891, at *22-25, with Compl. ¶¶ 30, 50 (noting that Defendants failed to act as prudent investors with Trust assets and failed to properly advise Plaintiff of his best investment options).

Defendants respond that they cannot have violated the duties Alabama common law places on trustees because they followed all applicable federal regulations. Defendants intend to assert that their actions to protect the Fund's liquidity, their public disclosures, and their valuation of the Fund's shares on a daily basis met the guidelines federal securities laws establish. (E.g., Defs.' Resp. at 10-11.) However, Defendants' intended arguments are defenses.

For more than a century, it has been clear that a party may not invoke federal jurisdiction on the basis of a defense – even one that is certain to be asserted. "[T]he right of the

10

plaintiff to sue cannot depend on the defense which the defendant may choose to set up." Tennessee v. Union & Planters' Bank, 152 U.S. 454, 459 (1894) (internal quotation marks and citation omitted); see also Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). Alabama law governs the relationship between Defendants as trustee and Kramer as beneficiary, and Kramer has not pled negligence per se. At most, federal regulations would provide evidence of whether Defendants have met the applicable standard of care. See Jones Food Co. v. Shipman, 981 So.2d 355, 364 n.9 (Ala. 2006) ("[N]ot every violation of a statute or an ordinance is negligence per se." (quoting Parker Bldg. Servs. Co. v. Lightsey, 925 So.2d 927, 931 (Ala. 2005) (alteration in original))).

**IV.   CONCLUSION**

Stripped to its essential elements, Plaintiff's suit is a purely state-law action that contains claims for which federal standards might serve as evidence of whether the Defendants have violated their state-law duties. This suit is, therefore, exactly the type of claim the Supreme Court has repeatedly instructed does not belong in federal court. Grable & Sons, 545

U.S. at 314 (explaining that the Court has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law."); Merrell Dow, 478 U.S. at 813; Franchise Tax Bd., 463 U.S. at 11; Union & Planters' Bank, 152 U.S. at 459.  Because Defendants have failed to demonstrate that Kramer's claim is in substance one of federal law or that his right to relief under state law requires resolution of a substantial federal-law question actually in dispute, the Court GRANTS the Motion to Remand.  City of Warren, 495 F.3d at 286.  This matter is REMANDED to the Circuit Court for Jefferson County, Alabama.

    So ordered this 2nd day of March, 2010.

                                       s/ Samuel H. Mays, Jr.
                                       SAMUEL H. MAYS, JR.
                                       UNITED STATES DISTRICT JUDGE